## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| DANIEL NEGRETE, *individually, and on behalf of all others similarly situated,* | )<br>)<br>) |
| Plaintiff, | ) Civil Action No.  4:23-cv-251<br>)<br>) CLASS-ACTION |
| v. | )<br>) |
| FLORIDA INSURANCE SERVICES, INC. dba SENIOR LIFE SERVICES, INC. | )<br>) **Jury Trial Demanded**<br>) |
| Defendant. | )<br>) |

### CLASS ACTION COMPLAINT

Plaintiff, Daniel Negrete, on behalf of himself and all others similarly situated, by and through his undersigned attorneys, submits his Complaint against Defendant Florida Insurance Services, Inc. d/b/a "Senior Life Services" ("Defendant" or "SLS"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1. Plaintiff Daniel Negrete ("Plaintiff" or "Mr. Negrete") brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendant SLS. Specifically, SLS violated Plaintiff and the putative class-members' rights by making two or more solicitation calls to residential subscribers whose numbers were registered on the Do Not Call Registry. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations.

## BACKGROUND ON THE TCPA

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights – specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. §

227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3)

8. Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2021 alone, there were over *five million complaints* from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

11. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87

(2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12. This Court has personal jurisdiction over Defendant, as SLS placed telemarketing calls to Mr. Negrete on his "515" area code phone, which is associated with the State of Iowa.

13. Additionally, SLS attempted to sell insurance policies to Mr. Negrete, thereby seeking business from an Iowa resident.

14. Through the above actions, SLS purposefully availed itself to the State of Iowa and it was reasonably foreseeable it would be haled to court in this State.

15. Plaintiff resided within this District at all times relevant hereto. Plaintiff received the calls at issue and experienced the associated harm within this District.

16. Accordingly, personal jurisdiction exists, and venue is proper pursuant to 28 U.S.C. §1391 (b)(2).

**PARTIES**

17. Plaintiff, Daniel Negrete is a natural person who resided in Des Moines, Iowa at all times relevant hereto.

18. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

19. Defendant SLS is a Vero Beach, Florida based insurance agency that specializes in senior-based plans such as burial insurance, Medicare and life insurance.

20. SLS maintains its headquarters at 2300 3rd Ct, Vero Beach, Florida 32960.

21. Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

22. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

23. At all times relevant hereto, Plaintiff Daniel Negrete owned a cell phone, the number for which was (515) XXX-8848.

24. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on December 21, 2003.

25. Plaintiff registered that cell phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls.

26. At all times relevant hereto, Plaintiff used that cell phone primarily for residential purposes such as speaking with friends and family.

27. On or around August 4, 2021 and August 9, 2021, SLS placed telemarketing calls to Plaintiff seeking to sell life and/or burial insurance policies for which Plaintiff did not consent or otherwise sign up to receive such calls.

28. On August 4, 2021, SLS called Mr. Negrete from the number (757) 607-4519.

29. When Mr. Negrete answered, the SLS agent identified herself as "Cally" (phonetic) and her company as "American Directive". When Mr. Negrete pressed for the actual identity of the company calling or the phone number at which he could call back, the caller evaded the question but stated she was working with "highly rated insurance carriers."

30. When Mr. Negrete once again asked for a number at which he could call "American Directive" back, the call was disconnected.

31. On August 9, 2021, Mr. Negrete received a call from (314) 661-5458. When he answered that call, a person who identified herself as "Amanda Jones" was on the line. Like the aforementioned caller, Jones stated was working for "American Directive" offering insurance plans.

PLAINTIFF'S CLASS-ACTION COMPLAINT

32. Because Mr. Negrete has come to understand telemarketers rarely disclose their true identities when engaging in unlawful marketing activities, Mr. Negrete stayed on the line with "Amanda Jones" from "American Directive" in order to learn the true identity of the caller.

33. Jones asked Mr. Negrete his age, which he provided.

34. Thereafter, Jones transferred Mr. Negrete to another SLS agent named "Vicky".

35. Vicky attempted to sell Mr. Negrete several different life insurance policies in that call, including Pioneer Insurance.

36. Mr. Negrete asked Vicky to email and text him some information about her company.

37. Vicky sent an SMS text message to Mr. Negrete of her SLS insurance license, which included her photo ID, her state-issued insurance agent license number, with the SLS logo and the company's Vero Beach address at the top of the license.

38. Because both the August 4, 2021 and August 9, 2021 calls were presented as being from "American Directive", both were made for the purpose of selling insurance policies and Mr. Negrete was able to ascertain the true identity of the calling party in the second call, Mr. Negrete understands and therefore alleges that SLS placed both the August 4, 2021 and August 9, 2021 calls described above.

39. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and disruption.

### Direct and Vicarious Liability

40. Without having had the benefit of discovery to show otherwise, Mr. Negrete understands and therefore avers that SLS is directly liable for the unsolicited calls because they were made directly by SLS.

41. Alternatively, if discovery reveals that some or all of the calls were made by third-party/parties on behalf of SLS, then SLS is vicariously liable for those calls.

42. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

43. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

44. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

45. Defendant SLS may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to SLS.

46. While Plaintiff alleges SLS is directly liable based on what he knows and understands at this time, if he learns the calls were made by agent(s) acting on SLS' behalf, Plaintiff will seek to hold SLS vicariously liable for those calls.

## CLASS ALLEGATIONS

47. Plaintiff brings this claim on behalf of a class, pursuant to Federal Rule of Civil Procedure 23.

48. Plaintiff seeks to represent the following classes:

> **Do-Not-Call Registry Class:** All persons in the United States where: (1) the person's telephone numbers were on the National Do-Not-Call Registry; (2) the person received two or more calls were on behalf of SLS within twelve months; (3) those calls were for the purpose of soliciting goods or services, from four years prior to the filing of this Complaint through the date a class is certified.

49. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

50. The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

51. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

52. Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor attorneys have any

interests which might cause them not to vigorously pursue this action.

53. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

54. Class Members are so numerous and that their individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

55. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

   a. Whether Defendant, or someone operating on its behalf, placed prerecorded voice calls to the cell phones of Plaintiff and the putative class members without obtaining the recipients' prior express written consent;

   b. Whether Defendant's conduct violates 47 U.S.C. § 227(c) and the corresponding rules and regulations implementing the TCPA; and,

   c. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

56. Plaintiff and the putative class members have claims arising out of Defendant's uniform course of conduct, namely improperly placing prerecorded voice calls to the Plaintiff and the putative class members.

57. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor

his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

58. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgements. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

59. The Class representative was at all times relevant hereto a resident of Des Moines, Iowa. Accordingly, this District is an appropriate forum in which to adjudicate this dispute.

60. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

## COUNT I
## DEFENDANT VIOLATED 47 US.C. § 227(C)(5) AND 47 C.F.R. § 64.1200(C)

61. Mr. Negrete incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

62. Mr. Negrete brings this Count individually and on behalf of all others similarly situated.

63. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

64. The penalty for each call made in violation of the TCPA's restrictions on placing solicitation calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

65. In addition, the TCPA allows the Court to enjoin SLS' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

66. By calling Mr. Negrete and the putative class members on their residential lines two or more times after their numbers were registered on the National Do Not Call Registry, SLS violated the TCPA, including but not limited to, 47 U.S.C. § 227(c) and its corresponding FCC regulations.

67. SLS knew or should have known that Mr. Negrete and the putative class members had their numbers registered on the Do Not Call Registry and SLS did not have express written consent to call their numbers.

68.     Mr. Negrete and the putative class members are entitled to damages of $500.00 per violation for each call placed by SLS and up to $1,500.00 per violation if the Court finds SLS willfully violated the TCPA.

### **Prayer for Judgment**

WHEREFORE, Plaintiff Daniel Negrete, individually, and or behalf of all other similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant SLS pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Mr. Negrete as the class representative;

b. Enter an order appointing Kimmel & Silverman, P.C and Simmons Perrine Moyer Bergman PLC as class counsel;

c. Enter judgment in favor of Mr. Negrete and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) and up to $1,500 per violation of each subsection if SLS willfully violated the TCPA;

d. Enter a judgment in favor of Mr. Negrete and the putative class that enjoins SLS from violating the TCPA's regulations prohibiting SLS from calling/texting numbers registered on the National Do Not Call Registry;

e. Award Mr. Negrete and the class all expenses of this action, and requiring SLS to pay the costs and expenses of class notice and administration; and,

f. Award Mr. Negrete and the class such further and other relief the Court deems just and appropriate.

### **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, Daniel Negrete, demands a jury trial in this case.

                                                Respectfully submitted,

Dated: July 19, 2023         /s/ *Philip A. Burian*
                                        PHILIP A. BURIAN   AT0001284
                                        *Simmons Perrine Moyer Bergman PLC*
                                        115 Third Street SE, Suite 1200
                                        Cedar Rapids, IA  52401
                                        Phone: 319-366-7641
                                        Facsimile: 319-366-1917
                                        pburian@spmblaw.com
                                        ATTORNEYS FOR PLAINTIFFS

Application for admission *pro hac vice* pending:

By: */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888 x 104
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
         teamkimmel@creditlaw.com

Christopher E. Roberts
Butsch Roberts & Associates LLC
231 South Bemiston Ave, Suite 260
Clayton, MO 63105
Phone: (314) 863 5700
Facsimile: (314) 863-5711
Email: croberts@butschroberts.com